## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ROBERT S. DAVIDSON, d/b/a PlasterTech, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | 13-942 C <br><br> Senior Judge Eric G. Bruggink |

## JOINT STATUS REPORT

Pursuant to the Court's instruction in its Opinion filed on July 29, 2018 (ECF 136), Plaintiff Robert S. Davidson, d/b/a PlasterTech (Davidson) and Defendant the United States (the Government) (collectively, the Parties), hereby submit their Joint Status Report regarding the quantum of interest / delay compensation. The Parties conferred and were not able to reach an agreed-upon amount for interest. The Parties, however, were able to agree to the following:

- Approximate Date of Judgment: September 1, 2018
- Compounding of Interest Rate: Annual

The Parties, however, were not able to agree to other components. Accordingly, the Parties respectfully submit their respective positions as to the quantum of interest / delay compensation.

### I. DAVIDSON'S POSITION

"Reasonable and entire compensation includes interest for delayed compensation of the royalty." *Hitkansut LLC v. United States*, 130 Fed. Cl. 353, 394 (2017), aff'd, 721 F. App'x 992 (Fed. Cir. 2018). This Court is given broad discretion in determining the appropriate amount of prejudgment interest. *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986).

Mr. Davidson believes the appropriate quantum of interest to be applied towards the judgment totals $1,808,501.99 in delay compensation/prejudgment interest.  Thus, the total amount for actual damages and prejudgment interest as of September 1, 2018 equals $5,363.448.94.[1]  *See* Exhibit 1, Interest Table.

Mr. Davidson and the USPS agree that any interest should be compounded annually.[2] The parties also agree, subject to the Court's approval, to setting the judgment date at September 1, 2018.  However, the parties disagree on most other material terms for calculating interest due, including the interest rate, the start date for prejudgment interest, and overall methodology. The arrival of Mr. Davidson's prejudgment interest amount is discussed in more detail below, but it is a straightforward calculation determined by applying an interest rate of 5.45%, compounded annually, towards the actual damages ($3,554,946.95), from the earliest date of infringement (December 1, 2010) to the date of judgment (September 1, 2018).

**Interest Rate**

In "setting the rate for prejudgment interest courts have used: the prime rate, the prime rate plus a percentage, the U.S. Treasury bill rate, the state statutory rate, corporate bond rates, a set consumer credit rate, a set percentage rate, the rate the patentee actually paid for borrowed funds and others." *The Boeing Co. v. United States*, 86 Fed. Cl. 303, 322 (2009).  The "rate of prejudgment interest and whether it should be compounded or uncompounded are matters left largely to the discretion of the court." *Id*.  In selecting the appropriate rate, the Court is guided

---

[1] Post-judgment interest should then apply from the total amount of actual damages and pre-judgment interest until the judgment is satisfied in full.  The rate of post-judgment interest is "the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. 1961(a).

[2] An award of compound rather than simple interest assures full compensation.  *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1555 (Fed. Cir. 1995).

by the purpose of prejudgment interest, which is to ensure that the intellectual property right owner "is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement." *Bio-Rad*, 807 F.2d at 969. In other words, it should place Mr. Davidson in the position he would have been in had the USPS paid and allowed Mr. Davidson to earn a return on his money.

Mr. Davidson's proposed interest rate is 5.45%. This is the rate that a Nevada resident like Mr. Davidson would earn on a judgment. Nevada's interest rate on a judgment is set at the prime rate at the largest bank in Nevada as set by the Commissioner of Financial Institutions on January 1 or July 1, as the case may be, plus two percent. *See* NRS 17.130(2); *see also* NRS 99.040 (same interest rate for contracts when no rate is fixed). The average prime rate at the largest bank in Nevada as set by the Commissioner of Financial Institutions on January 1 or July 1, between December 1, 2010 and June 29, 2018, plus two percent equals 5.45%.[3] *See* Exhibit 2, Historical Prime Interest Rate from Nevada's Commissioner of Financial Institutions.

Other federal courts have looked to the copyright holder's state statutory rate for prejudgment interest in determining how to compensate a plaintiff. *See Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 551, 557, 222 U.S.P.Q. 4 (Fed. Cir. 1984) (Federal Circuit affirmed district court's prejudgment interest award that included the use of Connecticut's statutory rate); *Veracode, Inc. v. Appthority, Inc.*, 2015 WL 5749435, *45 (D. Mass. 2015) (awarding prejudgment interest at the state rate of 12% for contract damages because the reasonable royalty rate is essentially a contract measure of damages); *Waterton Polymer Products USA, LLC v. Edizone, LLC*, 2015 WL 1186258, *5 (D. Utah 2015) (awarding

---

[3] Typically, courts will apply the average rate from infringement to judgment. *See*, *e.g.*, *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 721 F. Supp. 28 (D. Conn. 1989), aff'd in part and vacated in part, remanded, 939 F.2d 1540 (Fed. Cir. 1991) (averaged prime rate).

prejudgment interest at the state statutory rate of 10% per annum on the entire damage award based on the date of first infringement); *Global Traffic Technologies, LLC v. Emtrac Systems, Inc.*, 2014 WL 1663420, \*16 (D. Minn. 2014) (awarding prejudgment interest at the state statutory rate of 10% per annum not compounded since the T-bill rate and prime rate were too low to adequately compensate plaintiff); *Air Vent, Inc. v. Vent Right Corp.*, No. 02:08-cv-00146, 2011 WL 2117014, \*1–\*2 (W.D. Pa. May 24, 2011) (award prejudgment interest at state statutory rate of 6% and noting the Federal Circuit has affirmed awards of prejudgment interest at the state statutory rate).

The Court should apply Nevada's statutory rate as it provides Mr. Davidson with an interest rate commonly applied in Nevada – his state of residence. Mr. Davidson should not receive a lower interest rate simply because the Federal Government was the infringer of his intellectual property rights. Moreover, the use of this rate is more appropriate over the USPS's proposal to apply the 7-year T-Bill rate. The T-Bill rate provides a substantially lower rate of return than any prudent investor, like Mr. Davidson, would have received had he not lost the opportunity to invest the funds that were due to him.

In setting an interest rate, it is important to consider how the intellectual property right holder could have invested the funds had he received timely compensation. *The Boeing Co.*, 86 Fed. Cl. at 323. Mr. Davidson typically invests his money in assets that historically receive greater rates of return then the risk-free rate like that of the T-Bill rate or even a savings account rate. *See* Exhibit 3, Davidson's Decl. In fact, the use of Nevada's statutory rate is lower than the rate of return Mr. Davidson would have received in the marketplace given the "extraordinarily positive investment climate that prevailed during the years in question." *Id*. at 323-24. For example, since 2010, the S&P Index has averaged rates of returns of nearly 13% and most

benchmark diversified funds have easily seen returns in the range of 8% to 10%.[4] The USPS's delay in compensating Mr. Davidson prevented him from investing his money and receiving similar returns. Thus, at a minimum, the Court should apply an interest rate of 5.45% as provided for in Nevada, the jurisdiction where Mr. Davidson would have received his money.[5]

### **The Method of Calculation**

Mr. Davidson is proposing a straightforward computation for calculating prejudgment interest. This computation provides that prejudgment interest should be calculated by applying the interest rate of 5.45%, compounded annually, towards the actual damages ($3,554,946.95), from the earliest date of infringement (December 1, 2010) to the date of judgment (September 1, 2018).

The law generally provides that prejudgment interest runs from the earliest date of infringement to the date of judgment. *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988); *Comcast IP Holdings I LLC v. Sprint Commc'ns Co., L.P.*, 850 F.3d 1302, 1315 (Fed. Cir. 2017); *Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988). Here, there is no dispute that the earliest date of infringement was December 1, 2010. In the proposed calculation, Mr. Davidson is using September 1, 2018 as the date of judgment, but to the extent the Court sets a later date, then the interest amount is not materially impacted and can be easily recalculated under Mr. Davidson's proposal.

---

[4] *See* Exhibit 4, Yearly Returns of S&P 500 since 2010; *see also* http://news.morningstar.com/index/indexReturn.html and https://personal.vanguard.com/us/funds/tools/benchmarkreturns.

[5] To the extent the Court declines to apply Nevada's prejudgment interest rate, Mr. Davidson request the Court apply the average prime rate between December 1, 2010 and June 28, 2018, which equals 4.13%. (Historical Prime Rate Data is sourced from https://www.federalreserve.gov). Assuming all else equal, use of this rate would equate to total interest in the amount of $1,309,641.50 as of September 1, 2018. *See* Exhibit 5, Interest Table. The prime rate is commonly selected by the Courts over the T-Bill rate. *The Boeing Co.*, 86 Fed. Cl. at 322

On the other hand, the USPS proposes an allocation/proportion interest calculation providing for installments at the year-end over a four-year span (2010 to 2014). There are a number of problems with this proposal, including the fact that no evidence exists to suggest royalty payments under the hypothetical negotiation would have been set at the year-end as opposed to semi-annually, quarterly, monthly, weekly, or even daily.[6] Respectfully, the USPS's proposal is just another low-ball approach that does not reflect fair compensation for Mr. Davidson. In fact, the Court need look no further than USPS's post-trial brief where it already admitted that any prejudgment interest should be "calculated from a date three years before filing of this suit [December 2010]." ECF No. 131 at 40. The Court should reject the USPS' after-the-fact attempts to limit Mr. Davidson's compensation.

**II.    THE GOVERNMENT'S POSITION**

The Government contends that Davidson's proposal is not legally or factually supported. Instead, the Government proposes that the Court award delay compensation[7] based upon the following factors, as supported by the uncontested and stipulated evidence at trial.

- Date of First Sale of Stamps Held to be Infringing: December 1, 2010[8]

- Date of Hypothetical Lump Sum Royalty Payment: December 1, 2010[9]

---

[6]    Indeed, as an example of an issue with the USPS's proposal, is the fact that in 2014 it presumes a royalty payment at the year-end, even though the stamp was discontinued in January 2014. *See* Stip. Fact ¶25. Moreover, the evidence at trial also negates the USPS's proposal as the evidence showed the USPS books the breakage/retention upon issuance for sale. Trial Tr. 1695-1696 (Bokhart). Thus, even assuming an allocation/proportion theory was appropriate, then it should be based upon when the USPS booked the breakage/retention. A majority of this "pure profit" would have been booked no later than December 2011 because as of that date the USPS had printed and shipped to the field for sale a majority of the stamps. *See* ECF No. 136, Opinion, at 13.

[7]    In the context of Section 1498, this type of compensation is known as "delay compensation." Pitcairn v. United States, 547 F.2d 1106, 1120 (Ct. Cl. 1976). It is calculated by accumulating interest at one or more rates for the period during which payment is delayed.

[8]    See Stip. ¶ 20 (ECF 88).

- Date of Running Royalty Payments: December 31 of each year stamp revenue realized (2010-2014)[10]

- Date of Last Sale of Stamps Held to be Infringing: January 2014[11]

- Interest Rate: 7-year Treasury Bill Rate on December 1, 2010 (2.33%)[12]

Applying these factors, the Court should award delay compensation in the amount of $557,266.52. When combined with the $3,554,946.95 in royalties awarded by the Court, the total amount of compensation is $4,112,213.47.

**The Government's Position is Legally Supported; Davidson's is Not**

The "reasonable and entire compensation" mandated by Section 1498(b) includes delay compensation. See Gaylord v. United States, 678 F.3d 1339, 1345 (Fed. Cir. 2012) (citing Waite v. United States, 282 U.S. 508, 508-09 (1931)). The purpose of delay compensation is to place the patentee "in the economic position it would have held had royalties been timely paid[.]" Brunswick Corp. v. United States, 36 Fed. Cl. 204, 218-19 (1996). "The determination of the proper rate of interest or delay compensation is one of fact." Gargoyles, Inc. v. United States, 37 Fed. Cl. 95, 109 (1997) (quoting ITT Corp. v. United States, 17 Cl. Ct. 199, 233 (1989)).

The appropriate rate for determining delay compensation in this case is the seven-year United States Treasury rate. This Treasury rate properly compensates Davidson for the time value of money considering the lack of financial risk incurred by him. See Standard Mfg. Co. v. United States, 42 Fed. Cl. 748, 778 (1999) (T-Bill rates "account for inflation while avoiding a

---

[9]   See generally id.; ECF 136 at 34.

[10]  See ECF 136 at 34-35.

[11]  See Stip. ¶ 25 (ECF 88).

[12]  See Tr. 1657:18-58:13 (Bokhart); compare with Tr. 1381:12-21 (Timmins) (offering no opinion).

reward for risks which the plaintiff did not undertake."). There was no financial risk to Davidson for this "loan" as the government does not default on "debts," (i.e., judgments). See Gargoyles, 37 Fed. Cl. at 109. Additionally, there is no market risk because "delay damages are calculated based on a market that has already acted." Id.

This Court has frequently utilized Treasury rates for the calculation of delay compensation in Section 1498(a) patent cases. See ITT Corp., 17 Cl. Ct. at 243 (approving the use of 52 week T Bill rates); Gargoyles, 37 Fed. Cl. at 109-10 (one year T-Bill rates); Standard Mfg., 42 Fed. Cl. at 778 (same); Wright v. United States, 53 Fed. Cl. 466, 479 (2002) (same); Paymaster Techs., Inc. v. United States, 61 Fed. Cl. 593, 615 (2004) (same), vacated and remanded on other grounds, 180 Fed. Appx. 942, 949, 2006 WL 1228851, *6 (Fed. Cir. 2006). In this intellectual property context, this Court has also noted that the use of Treasury notes with maturity periods that approximate the prejudgment period are appropriate. See Hitkansut LLC v. United States, 130 Fed. Cl. 353, 394 (2017) ("The court finds that a Treasury note rate sufficiently compensates Hitkansut because it reflects minimal risk, and that a 10–year Treasury note rate is warranted because it is consistent with the approximate length of time between the date of infringement and the date of judgment."); see also FastShip, LLC v. United States, 131 Fed. Cl. 592, 627 (2017). Additionally, the Federal Circuit has approved the use of T-Bill rates in other contexts. See Allen Archery, Inc. v. Browning Mfg. Co., 898 F.2d 787, 789, 792 (Fed. Cir. 1990) (affirming the trial court's use of 3 month T-Bill rates for prejudgment interest); Datascope Corp. v. SMEC, Inc., 879 F.2d 820, 829 (Fed. Cir. 1989) (affirming the trial court's use of the T-Bill rate for interest pursuant to 28 U.S.C. § 1961).

Congress has also approved the use of Treasury rates as a statutory measure of interest. Compensation in certain land condemnation proceedings includes interest calculated at a rate

based on the weekly average one year constant maturity Treasury yield. See 40 U.S.C. §§ 3114, 3116 (formerly cited as 40 U.S.C. §§ 258a, 258e-1). The statutory measure of interest for such cases is instructive because the government's infringement of a copyright is analogous to the taking of a license under an eminent domain theory. See Gaylord, 678 F.3d at 1342-43 (citing Leesona, 599 F.2d at 964). Post-judgment interest is also calculated at a rate equal to the one-year constant maturity Treasury yield in district court actions, 28 U.S.C. § 1961, in particular cases before this Court, 28 U.S.C. §§ 2516(b), 1961(c)(3), and in non-tax judgments against the United States in the United States Court of Appeals for the Federal Circuit, 28 U.S.C. § 1961(c)(2).

Conversely, the government has not found any instances of this Court adopting the Nevada statutory rate that Davidson has indicated he will assert. Nevada state law has no applicability to this Section 1498 case, and indeed no relevant case law supports this exorbitant rate.

**The Government's Position is Factually Supported; Davidson's is Not.**

Despite bearing the burden of proof with respect to the factual issue of delay compensation, Davidson never asserted entitlement to a particular measure of delay compensation in any of his trial briefs. See ECF 84 (asserting entitlement only to the fair market value of a license); ECF 128 at 37 (asserting entitlement to delay compensation at an unspecified "statutory rate"). Davidson's failure endured, despite the obligations imposed by the Court's Rules and the Government's attempts to obtain this information from Davidson. See RCFC 26(a)(1)(A)(iii) (requiring a party to disclose "a computation of each category of damages claimed"); ECF 43; ECF 43-2 at A10-11 (Davidson refusing to respond to an interrogatory seeking information on "each and every category of compensation" sought). During trial,

Davidson offered no evidence regarding the measure of delay compensation, and Davidson's damages expert admitted that his expert report contained no opinions regarding delay compensation. See Tr. 1381:12-21 (Timmins).

In the meet and confer preceding the filing of this joint status report, Davidson's counsel represented that the basis for his request for a 2 percent increase over the prime rate is his purported track record of successful investing. However, Davidson introduced no such evidence at trial and actively fought discovery into his financial records. Thus, Davidson cannot be permitted to introduce self-serving justifications for his requested interest rate after the evidentiary record has closed. Because delay compensation is a fact issue for which Plaintiff bears the burden of proof, Davidson should be barred from offering any assertion regarding delay compensation. At the very least, the Court should give them no weight as his present assertion and calculation is unsupported by the record.

The Government consistently asserted that if delay compensation were awarded, the Court should base the compensation on the appropriate Treasury rate. See ECF 86 at 35-36; ECF 131 at 40. During trial, the Government's damages expert testified that a seven-year Treasury note was the appropriate benchmark, based on the financial risk to Davidson. See Tr. 1657:18-58:13 (Bokhart). Accordingly, the Court should adopt the seven-year Treasury note as the appropriate benchmark in this case.

**The Government's Calculation**

The Government's proposed use of the seven-year Treasury note rate is more favorable to Davidson than the one-year (or shorter) Treasury rates adopted in other relevant cases. See ITT Corp., 17 Cl. Ct. at 243; Gargoyles, 37 Fed. Cl. at 109-10; Standard Mfg., 42 Fed. Cl.

at 778; Wright, 53 Fed. Cl. at 479; Paymaster, 61 Fed. Cl. at 615.[13]  Additionally, the Government's calculation of accrued interest is consistent with this Court's finding in Gaylord, where the parties agreed to a 19.5 percent multiplier on the total royalty amount to account for accrued interest.  Gaylord v. United States, No. 1:06-cv-539, Slip. Op. at 5 (Ct. Fed. Cl. Sept. 30, 2013).  The Government's calculation below results in a total accrued interest calculation of $557,266.52, which is roughly 16 percent of the pre-interest royalty amount awarded by this Court.  Conversely, Davidson's interest calculation awarding himself $1.7 million in accrued interest is nearly 49 percent of his total royalty award.  Finally, delay compensation for the Court's award of a running royalty for the retained stamps should only begin accruing as of the date of the sale of those stamps.[14]  The Parties stipulated to the timing of the sales of the stamps.  See ECF 88 ¶ 26.  Thus, the Government calculated delay compensation as follows:

| **7-Year T-Note Rate<br>Dec 31, 2010 - Sept 1, 2018<br>Compounded Annually** | | | | | | |
|---|---|---|---|---|---|---|
| Running Royalty | $3,549,946.95 | | | | | |
| Flat Fee Royalty | $5,000.00 | | | | | |
| Total | $3,554,946.95 | | | | | |
| i-rate 12/1/2010 | 2.33% | | | | | |
| | | | | | | |

---

[13]  Indeed, the government has calculated that using the 52-week Treasury rate in effect for each year of the prejudgment period, compounding annually, would yield a total accrued interest of $118,383.42.  The 52-week rate during this period was as low as .12 percent and was less than 1 percent until March of 2017.  *See* https://www.treasury.gov/resource-center/data-chart-center/interest-rates/Pages/TextView.aspx?data=yieldYear&year=2017.

[14] Here again, Davidson's calculation overstates the interest he is due by making interest accrue for all royalty payments in December of 2010.  The Postal Service could not have calculated his royalty payments on that date because no stamps had yet been sold.

| Period | Sales Volume | Proportion of Total Sales | Allocation of Total Running Royalty by Year | Allocation of Total Running Royalty by Year Plus Interest | Flat Fee Royalty Plus Interest | Total Plus Interest |
|---|---|---|---|---|---|---|
| 2010 | 92,273,370 | 1.8640% | $66,171.01 | $66,171.01 | $5,009.71 | $71,180.72 |
| 2011 | 3,044,223,258 | 61.5060% | $2,183,430.37 | $2,251,143.17 | $5,126.43 | $2,256,269.60 |
| 2012 | 1,791,350,576 | 36.1930% | $1,284,832.30 | $3,588,427.10 | $5,245.88 | $3,593,672.98 |
| 2013 | 21,515,963 | 0.4350% | $15,442.27 | $3,687,479.72 | $5,368.11 | $3,692,847.83 |
| 2014 | 90,586 | 0.0020% | $71.00 | $3,773,469.00 | $5,493.19 | $3,778,962.19 |
| 2015 | | | | $3,861,390.83 | $5,621.18 | $3,867,012.00 |
| 2016 | | | | $3,951,361.23 | $5,752.15 | $3,957,113.38 |
| 2017 | | | | $4,043,427.95 | $5,886.18 | $4,049,314.13 |
| 09/01/2018 | | | | $4,106,235.86 | $5,977.61 | $4,112,213.47 |

[*signatures contained on next page*]

Dated: July 27, 2018
Respectfully submitted by:

PISANELLI BICE PLLC

By:   /s/ James J. Pisanelli
James J. Pisanelli, Esq., Bar No. 4027
Todd L. Bice, Esq., Bar No. 4035
Debra L. Spinelli, Esq., Bar No. 9695
Dustun H. Holmes, Esq. Bar No. 12097
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: 702.214.2100
Facsimile: 702.214.2101

*Attorneys for Plaintiff Robert S. Davidson d/b/a PlasterTech*

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

GARY L. HAUSKEN
Director

Of Counsel:
LEE L. PERLA
ALEX HANNA
Department of Justice

REDDING C. CATES
United States Postal Service

/s/ Scott Bolden
SCOTT BOLDEN
Deputy Director
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC 20530
Email: Scott.Bolden@USDOJ.gov
Telephone:   (202) 307-0262
Facsimile:   (202) 307-0345